## 17288

RUBY BERRY HARRIS, as Executrix of the Last Will and Testament of Fulton Dukes Berry, Appellant, v. THELMA McINTOSH BERRY *et al.*, Respondents.

(98 S. E. (2d) 251)

202

*Messrs. Nelson, Mullins & Grier,* of Columbia, *and J. Howard Yates,* of Charleston, *for Appellant,* ▇▇▇▇▇

*Messrs. Winter & Winter, Frank L. Taylor* and *Eugene F. Rogers,* of Columbia, *for Respondents,* ▇▇▇▇▇

May 7, 1957.

LEGGE, Justice.

On February 27, 1952, Fulton Dukes Berry, of Richland County, then a patient in the Veteran's Hospital at Kecoughtan, Virginia, executed an instrument purporting to be his last will and testament, in which he named as executrix his sister Ruby Berry Harris. On April 22, 1952, he died; and the said instrument was, on the petition of Mrs. Harris, admitted to probate in common form by the Probate Court of Richland County on May 12, 1952. Its validity having been thereafter contested by decedent's widow, Thelma McIntosh Berry, the Honorable G. Badger Baker, Presiding Judge, refused proponent's motion at the close of the testimony for direction of a verdict in her favor, and submitted the issues to the jury as follows:

1. Did Mr. Berry, at the time of the execution of the paper propounded as his will, have sufficient mental capacity to make his will and understand its contents?

2. Was Mr. Berry acting under undue influence of Ruby Berry Harris when he executed said paper?

3. Is the paper propounded as his will the true will of Mr. Berry?

The jury answered the first two questions in the affirmative, and the third in the negative. The presiding judge having refused proponent's motion for judgment n. o. v. or in the alternative, a new trial, she now appeals on exceptions presenting for determination the following questions:

1. Was there sufficient evidence to go to the jury on the question of undue influence?

2. Did the trial judge err in excluding certain letters written by the decedent to members of his family, beneficiaries under the proposed will, as within the prohibition of Section 26-402 of the 1952 Code?

The first of these questions requires answer before we proceed to consideration of the second; if the first be answered in the negative, the second becomes academic. Also, our decision of the first question must necessarily be based solely upon the evidence admitted at the trial, and without consideration of the excluded letters with which the second question is concerned.

Appeal from the Probate Court to the Circuit Court in a contest as to the validity of a will is in the nature of a case at law rather than in equity, *Meier v. Kornahrens,* 113 S. C. 270, 102 S. E. 285. Here the parties waived a hearing in the Probate Court and transferred the case, by consent order, to the Court of Common Pleas for hearing, as they had the right to do, *Muldrow v. Jeffords,* 144 S. C. 509, 142 S. E. 602. But whether a case of "will or no will" in the circuit court arises by appeal or by consent after waiver of the Probate Court hearing, the issues submitted to the jury as to mental capacity and undue influence are, under the settled law of this state, treated as factual issues in a law case; and the jury's finding will not be disturbed on appeal if there be any evidence to sustain it. *Hughes v. Duncan,* 175 S. C. 367, 179 S. E. 326; *Moorer v. Bull,* 212 S. C. 146, 46 S. E. (2d) 681.

Whether the evidence on the part of the contestant in the instant case, taken in connection with that offered by the proponent (other than the excluded letters) was sufficient to warrant inference that the will was the result of undue influence of the testator's sister, Mrs. Harris, is a question that has given us much concern. Bearing in mind that "the issue of undue influence should be resolved in the light of the proposition that a sane testator has the right to dispose of his property as he chooses", 57 Am.

Jur., Wills, Par. 351, p. 258; *Floyd v. Floyd,* 3 Strob. 44.
49 Am. Dec. 626; *Woodward v. James,* 3 Strob. 552, 51
Am. Dec. 649; that there is no longer any issue as to the
testator's mental capacity at the time when he made the
will; that "undue influence" invalidating a will must be
such as to overcome the testator's wishes and to substitute
for them those of the other person, 57 Am. Jur., Wills, Par.
350, p. 258; and that the mere influence of affection and
attachment, or the mere desire of gratifying the wishes of
another, will not vitiate a testamentary act unless that act
was the result of coercion or importunity beyond the tes-
tator's power to resist, *Smith v. Whetstone,* 209 S. C. 78,
39 S. E. (2d) 127;—the question posed above is a very
close one under all of the evidence here. We shall not discuss
the evidence in detail, because the case must be retried.
Viewed in the light most favorable to the contestant, we
think that it was sufficient to carry the issue of undue in-
fluence to the jury.

Mrs. Mottie Berry Wells, a sister of the decedent and a
beneficiary of the disputed will, testified on behalf of the·
proponent that she had received from Mr. Berry three letters
addressed to her by him, dated respectively October 14, 1951,
December 6, 1951 and January 11, 1952, the first typewrit-
ten and signed in his handwriting, and the others wholly in
his handwriting. Mrs. Sue Berry Schubler, a first cousin
of the decedent, and also a beneficiary of the disputed will,
testified on behalf of the proponent that she had received
from him a letter written to her in his handwriting under
date March 30, 1952.

The authenticity of these letters is not questioned; and
there is no controversy as to their relevancy to the issue of
undue influence. The witnesses testified, without objection,
to their receipt and that the handwriting was that of the
decedent; the letters were marked for identification; and
counsel for the proponent then offered them in evidence.
Objection was then interposed as to each of them upon the
ground that they were inadmissible because of Section 26-

402 of the 1952 Code, commonly referred to as the "Dead Man's Statute". This objection was sustained and the letters were accordingly excluded. Appellant assigns error in such ruling.

The provisions of Section 26-402 pertinent to the issue here are: that no person having an interest which may be affected by the event of the trial "shall be examined in regard to any transaction or communication between such witness and a person at the time of such examination deceased * * * as a witness against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person * * * when such examination or any judgment or determination in such action or proceeding can in any manner affect the interest of such witness * * *."

The ban of the statute is directed against the witness, not the "transaction or communication". *Scott v. Wiggins,* 113 S. C. 88, 101 S. E. 113; *Van Ness v. Schachte,* 143 S. C. 429, 141 S. E. 721. It is founded on the principle that it is against public policy to allow a witness thus interested to testify as to such matters when such testimony, if untrue, cannot be contradicted. *Trimmier v. Thomson,* 41 S. C. 125, 19 S. E. 291.

Section 26-402 is in restriction of the general rule (Section 26-404) that one's interest in the event of the action does not disqualify him as a witness therein. It is therefore to be strictly construed, and its restriction is not to be extended beyond its clearly expressed purpose. *Guery v. Kinsler,* 3 S. C. 423; *Jones v. Plunckett,* 9 S. C. 392; *Rapley v. Klugh,* 40 S. C. 134, 18 S. E. 680, 58 Am. Jur., Witnesses, Par. 216, p. 148; *Cf. Brevard v. Fortune,* 221 S. C. 117, 69 S. E. (2d) 355.

There can be no doubt that, had any of the letters in question been lost, the witness could not have testified, over objection, to its contents. In such case she would have been clearly barred by the statute, *Boozer*

*v. Teague,* 27 S. C. 348, 3 S. E. 551. But such was not the case, nor was objecstion made to testimony by the witnesses as to receipt of the letters and as to their authorship. The issue, then is whether Section 26-402 operates, in these circumstances, to preclude their introduction in evidence.

The precise question appears not to have been passed upon in this jurisdiction or in any of the cases in other jurisdictions to which our attention has been directed; but we are clearly of the opinion that under the facts of the present case the letters were not within the prohibition of Section 26-402. Having been identified as before stated, no testimony by the interested witness was needed to prove their contents. They would have spoken for themselves.

*Standridge v. Powell,* 11 S. C. 549, was an action cn a sealed note that had been assigned by the payee to the plaintiff. The defendants pleaded payment, and at the trial one of them offered to prove that the payee-assignor, who was dead at the time of the trial, had given a receipt in full, which had been in the witness' possession but had been lost. Objection to the competency of the witness to testify ·at all concerning the receipt was overruled by the trial judge. On appeal, this court held that while the statute (then Section 415), if timely invoked, would have debarred the witness from testifying as to the contents of the receipt, it did not prevent his testifying to the fact of its loss. The following excerpt from the opinion bears upon the question here at issue:

"If Robert Powell had in his actual possession, at the time of the trial, a receipt in full from E. Hughes, it cannot be for a moment contemplated that he would have been prevented by Section 415 from putting it in evidence, but he would have been obliged to prove the handwriting by another person, or by testimony other than his own. *But the paper, after being proved, would testify in regard to itself."* (Italics ours.)

Reversed and remanded for new trial.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.