1183

FIRST CITIZENS BANK & TRUST COMPANY OF SOUTH CAROLINA, as Executor of the Estate of Hattie S. Sharpe, Deceased, Respondent v. Mae Harman INMAN, Apellant.

(370 S. E. (2d) 99)

Court of Appeals

*H. Ray Ham,* Cayce-West Columbia, and *James B. Richardson, Jr.,* of *Richardson & Smith,* Columbia, *for appellant.*

*B. Michael Brackett,* of *Sherrill & Townsend,* Columbia, and *Robert K. Bouknight,* of *Bouknight, Nicholson, Davis, Frawley & Anderson,* Lexington, *for respondent.*

Heard April 12, 1988.

Decided June 27, 1988.

SHAW, Judge:

Appellant, Mae Harman Inman, appeals the granting of a directed verdict in favor of respondent, First Citizens Bank & Trust Company of South Carolina, (the Bank). In a hearing before the probate court judge of Lexington County, he found no undue influence by the Bank over Hattie S. Sharpe, appellant's aunt, concerning her destruction of a codicil of her Will. Following the presentation of evidence in a trial de novo before a jury in the circuit court, the motion for a directed verdict was granted. We affirm.

Mrs. Sharpe executed a Will on July 27, 1973 wherein she bequeathed all her property to a trust and named the Bank as trustee. The Will provided that upon her death the entire trust would be distributed as follows: 10% to St. Peters Lutheran Church, 5% each of 8 relatives and friends, and the remainder to the Lowman Home. On July 17, 1981, Mrs.

Sharpe executed a codicil wherein she bequeathed her house and furnishings to Mrs. Inman.

In 1982, she began changing her Will and trust. In June of 1982, the Bank wrote to her a letter which summarized a meeting between the Bank, Mrs. Sharpe and Mr. Rawl, her attorney. It was at this time that Mrs. Sharpe considered a Charitable Trust as indicated by this letter.

In November of 1982, the Bank wrote another letter to Mrs. Sharpe. The letter made many recommendations including revocation of the first codicil.

In June of 1983, the Bank wrote a letter to Attorney Rawl requesting him to amend her Will so that certain dollar amounts were bequeathed to certain persons with the remainder to be put in the charitable trust.

In July of 1983, Mrs. Sharpe revoked the first codicil. In November of 1983, she amended the Trust Agreement by changing the amounts of money to Mrs. Inman, St. Peters Church, and various amounts to other relatives. The remainder of the estate was put in a perpetual trust and the income was to be distributed for the Lutheran Church of America. Shortly thereafter, the Trust Agreement was amended for the third and final time wherein she changed some distributees and omitted the Lowman Home and Newberry College. The final version differed from the recommendations in the letter from the Bank.

While the above changes in her Will were being made she was in reasonably good health and during her latter years she continued to work in her yard, talk with neighbors, do some cooking and go to a grocery store which was a short distance from her home. Mrs. Sharpe died in 1985 at age ninety.

The appellant-contestant has the burden of proving the revocation of the codicil in her favor was the result of undue influence. It must be shown that influence was brought directly to bear upon the testamentary act and that influence amounted to coercion destroying free agency on the part of the testator. *Mock v. Dowling*, 266 S. C. 274, 222 S. E. (2d) 773 (1976).

Undue influence "must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment; it must not be the mere desire of

gratifying the wishes of another, for that would be a very strong ground in support of the testamentary act; by importunity which could not be resisted; that it was done merely for the sake of peace; so that the motive was tantamount to force and fear." *Calhoun v. Calhoun,* 277 S. C. 527, 290 S. E. (2d) 415 (1982), citing *Floyd v. Floyd,* 3 Strob. 44, 34 S.C.L. 23 (1848). See also *In Re Last Will and Testament of Smoak,* 286 S. C. 419, 334 S. E. (2d) 806 (1985).

## CONCLUSION

Mrs. Sharpe exhibited a pattern of changing her Will over a period of years. When these changes were desired, she went through a consistent procedure of talking with her lawyer, Mr. Rawl, and of talking with representatives of the Bank. At times there were suggestions by the Bank, but Mrs. Sharpe often did not follow the Bank's suggestions. It appears she was the ultimate decision maker. Therefore, we hold Mrs. Inman failed to prove undue influence.

Affirmed.

SANDERS, C. J., and BELL, J., concur.