THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE
 STATE OF SOUTH CAROLINA
In
 The Court of Appeals

 
 
 
 Alpha Contracting
 Services, Inc., Appellant,
 
 
 

v.

 
 
 
 Household Finance Corp.,
 II; John W. Harris, d/b/a S.C. Corporate Real Estate Service; and S.C.
 Corporate Real Estate Service, Respondents.
 
 
 

Appeal
 From Richland County
 Benjamin
 H. Culbertson, Circuit Court Judge

Unpublished
 Opinion No. 2011-UP-289
 Submitted
 May 4, 2011  Filed June 13, 2011 

AFFIRMED

 
 
 
 Donald
 E. Jonas, of Columbia, for Appellant.
 Thad
 H. Westbrook and Candace C. Jackson, both of Columbia, for Respondent Household
 Finance Corporation, II.
 Kevin A. Hall and Matthew Todd Carroll, both of Columbia, for Respondent John W. Harris, d/b/a SC Corporate Real Estate Service.

 
 

PER CURIAM: Alpha
 Contracting Services, Inc. (Alpha) brought this negligent misrepresentation action
 against Household Finance Corp., II (Household) and John W. Harris, d/b/a S.C.
 Corporate Real Estate Service, (Harris) (collectively Respondents) after
 discovering that a residence it purchased had approximately 1,000 square feet less
 than the amount represented in a multiple listing service (MLS).  Alpha seeks
 review of the circuit court's order granting summary judgment to Respondents.  We affirm.
FACTS/PROCEDURAL
 HISTORY
On June 7, 2005,
 Harris, a real estate broker, entered into an Exclusive Right to Sell Agreement
 with Household concerning one of its foreclosure properties at 6 Rice Mill
 Ferry Road in Richland County.  Unbeknownst to Harris, sometime in June 2005,
 Household received a copy of a private appraisal it had commissioned.  The
 appraisal indicated that the house contained 3,043 square feet of heated living
 space.  Household did not provide a copy of the appraisal to Harris.  
Harris advertised
 the property in an MLS listing, which stated that the property contained
 approximately 3,916 heated square feet of living space and the information in
 the listing was "Deemed Reliable, but Not Guaranteed."  Harris had
 obtained the information regarding square footage from the Richland County tax
 assessor's office.  The amount indicated was consistent with the square footage
 noted in the 2005 Richland County tax appraisal for the property.  
In November
 2005, Alpha was incorporated for the purpose of renovating and reselling homes.
  In January 2006, Alpha entered into a contract of sale for Household's
 property on an "as is where is" basis.  The contract included the
 following provision regarding inspection of the property:  

 The
 Listing and Selling Broker(s) recommend that Purchaser obtain a home inspection. 
 Purchaser has the right within ten (10) business days after acceptance of
 contract, to have home inspected by qualified professional inspectors of his
 choice . . . Purchaser's failure to notify Seller or Seller's Agent in writing
 of any defect found by the home inspection within the time limits herein
 provided, or Purchaser's acceptance of the deed at closing, shall constitute
 Purchaser's full acceptance of the condition of the property and a waiver of
 Purchaser's right to object to any defects found by the home inspection(s).

The contract
 also contained the following disclaimers: "The parties acknowledge that
 the Listing and Selling Broker(s) and their Agent(s):  (A) Give no warranty of
 any kind, express or implied, as to the physical condition of the property or
 as to [the] condition of or existence of improvements, services or systems
 thereto . . . ; (B) Give no warranty, express or implied, concerning . . . the
 accuracy of the square footage[,] heated or unheated . . . (D) Give no
 warranty, express or implied, as to the fitness for a particular purpose of the
 property or improvements thereto . . . ."  An addendum to the contract
 included the following language: "Buyer acknowledges . . . that Buyer has
 been given a reasonable opportunity to inspect and investigate the property and
 all improvements thereon . . . and that in purchasing the property[,] Buyer is
 not relying on Seller, or its agents, as to the condition or safety of the
 property and/or any improvements thereon . . . ."    
Alpha does not
 dispute the fact that it did not measure the home before closing on the
 purchase for $205,000.  After purchasing the home, Alpha renovated it and
 placed it on the market.  Alpha then commissioned an appraisal of the property,
 which indicated that it had 2,942 square feet of heated living space instead of
 3,916 square feet as indicated by the MLS listing.  Alpha later sold the
 property for $280,000.  
Alpha then filed
 this action against Respondents, asserting claims for negligence, negligent
 misrepresentation, breach of contract, and breach of implied warranty.  The
 circuit court granted Respondents' summary judgment motions, and this appeal
 followed. 
ISSUES ON APPEAL

 1. Did the circuit
 court properly grant summary judgment to Respondents when they were entitled to
 judgment as a matter of law on each of Alpha's claims?
 2. Did the circuit
 court properly grant summary judgment to Respondents without first
 requiring Household to comply with Alpha's discovery requests?

STANDARD
 OF REVIEW
On appeal from
 the grant of a summary judgment motion, this court applies the same standard as
 that required for the circuit court under Rule 56(c), SCRCP.  Brockbank v. Best Capital Corp.,
 341 S.C. 372, 379, 534 S.E.2d 688, 692 (2000).  Summary judgment is proper
 when there is no genuine issue as to any material fact and the moving party is
 entitled to judgment as a matter of law.  Rule 56(c), SCRCP; Adamson v. Richland Cnty. Sch. Dist. One,
 332 S.C. 121, 124, 503 S.E.2d 752, 753 (Ct. App. 1998).  "To
 determine if any genuine issues of fact exist, the evidence and all reasonable
 inferences must be viewed in the light most favorable to the non-moving party."  Sauner v. Pub. Serv. Auth. of S.C., 354 S.C. 397, 404, 581 S.E.2d 161,
 165 (2003).  Further, "in cases applying the
 preponderance of the evidence burden of proof, the non-moving party is only
 required to submit a mere scintilla of evidence in order to withstand a motion
 for summary judgment."  Hancock
 v. Mid-South Mgmt., Inc., 381 S.C. 326, 330, 673 S.E.2d
 801, 803 (2009). 
"The
 purpose of summary judgment is to expedite disposition of cases [that] do not
 require the services of a fact finder."  George v. Fabri, 345 S.C. 440,
 452, 548 S.E.2d 868, 874 (2001).  "Summary
 judgment is appropriate in those cases in which plain, palpable and
 undisputable facts exist on which reasonable minds cannot differ."  Priest
 v. Brown, 302 S.C. 405, 408, 396 S.E.2d 638, 639 (Ct. App. 1990). 
 "It is not sufficient that one create an inference [that] is not
 reasonable or an issue of fact that is not genuine."  Id.  Once the
 moving party meets the initial burden of showing an absence of evidentiary
 support for the opponent's case, the opponent cannot simply rest on mere
 allegations or denials contained in the pleadings but must come forward with
 specific facts showing there is a genuine issue for trial.  Rule 56(e),
 SCRCP; Boone v. Sunbelt Newspapers, Inc., 347 S.C. 571, 579, 556 S.E.2d 732, 736 (Ct.
 App. 2001).  
LAW/ANALYSIS
I.   Judgment
 as a Matter of Law
Alpha maintains
 that the circuit court erred in granting summary judgment to Respondents
 because Alpha presented more than a scintilla of evidence showing that
 Respondents grossly misstated the square footage of the house Alpha purchased
 and intentionally withheld information as to the actual square footage.  We
 believe the circuit court correctly granted summary judgment to Respondents
 regardless of any evidence of Respondents' intent to withhold information
 because the contract of sale expressly disclaimed any warranty as to the home's
 square footage and because Alpha failed to measure the square footage before closing
 on the purchase.  We will address each of Alpha's causes of action in turn.
          A.  Negligent
 Misrepresentation
To
 establish a claim for negligent misrepresentation, a plaintiff must show:  

 (1) the defendant made a false representation to the plaintiff;
 (2) the defendant had a pecuniary interest in
 making the statement; (3) the defendant owed a duty of care to communicate
 truthful information to the plaintiff; (4) the defendant breached that duty;
 (5) the plaintiff justifiably relied on the representation; and (6) the
 plaintiff suffered a pecuniary loss as a result of such reliance.  

Schnellmann
 v. Roettger, 368 S.C. 17, 20-21, 627 S.E.2d 742, 744 (Ct. App. 2006), aff'd as modified on other grounds, 373 S.C. 379, 645 S.E.2d
 239 (2007).  
In Schnellmann,
 two home purchasers asserted a negligent misrepresentation claim against a real
 estate listing agent based on the discrepancy between the square
 footage indicated in an MLS listing and the actual square footage.  Id. at 20, 627 S.E.2d at 744.  This court noted:

 The Schnellmanns could have discovered the misstatement by simply
 requesting a copy of the appraisal or by having someone come in to measure the
 property. They were informed via the MLS listing that the measurements were not
 precise. The Schnellmanns viewed the house, and proceeded with the purchase
 without finally determining the exact square footage. In light of the evidence
 presented, we agree with the trial court's conclusion that if the Schnellmanns
 relied on the approximation of the square footage contained in the listing, such
 reliance was unreasonable as a matter of law.

Id. at
 21, 627 S.E.2d at 745 (emphasis added).
 

Like the
 purchasers in Schnellmann, Alpha failed to take its own
 measurements of the home's square footage.  Therefore, Alpha's reliance on the
 square footage indicated in the MLS listing was unreasonable as a matter of
 law.  Alpha cannot obtain compensation from Respondents if it has not exercised
 its own due diligence.  See Schnellmann, id. at
 21, 627 S.E.2d at 745 ("[T]here can be no liability for casual statements,
 representations as to matters of law, or matters which plaintiff could
 ascertain on his own in the exercise of due diligence.") (citation and internal
 quotation marks omitted).  
Alpha argues
 that the determination of the right to rely on a defendant's representation
 necessarily requires weighing the evidence of whether the representation was
 material and intentional or insubstantial and inadvertent.  However, Alpha
 cites no authority for this proposition.  Therefore, Alpha has abandoned this
 argument.  See Rule
 208(b)(1)(D), SCACR (requiring the citation of authority in the argument portion of an appellant's brief); First
 Sav. Bank v. McLean, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting that when a party fails to cite authority or when
 the argument is simply a conclusory statement, the party is deemed to have
 abandoned the issue on appeal).
Alpha
 cites the following language from section 40-57-137(F) of the South Carolina
 Code (2011) in support of its argument that the evidence of Respondents' intent
 precluded summary judgment:  

 A seller's agent, the company, and the broker-in-charge are not
 liable to a buyer for providing the buyer with false or misleading
 information if that information was provided to the licensee by his
 client and the licensee did not know or have reasonable cause to suspect the
 information was false or incomplete.
 
 (emphasis added).[1] 
 Admittedly, this statute creates a duty of care on the part of a real estate
 broker toward a purchaser to avoid burying his head in the sand with regard to
 the condition of the property.[2] 
 This would establish the third element of the negligent misrepresentation
 claim.  However, section 40-57-137(F) does not suggest that a plaintiff has
 established all of the elements of a negligent misrepresentation claim if
 the plaintiff merely presents evidence that the broker had reasonable cause to
 suspect information provided to him by his client was false or incomplete.  The
 language in subsection (G) of the statute lends support to this conservative
 interpretation of subsection (F): "Nothing in this chapter limits the
 obligation of the buyer to inspect the physical condition of the property which
 the buyer may purchase."[3]  

Here, Alpha relied
 on an MLS listing that expressly stated that the information was not
 guaranteed.  Further, the parties' contract expressly disclaimed any warranty
 as to square footage.  Alpha, therefore, cannot show even a scintilla of
 evidence as to the fourth element of the negligent misrepresentation claima
 breach of the duty of care.  
Moreover, Alpha
 failed to take its own measurements of the home, and, thus, its reliance on the
 MLS listing was unreasonable as a matter of law.  This precluded showing even a
 scintilla of evidence on the justifiable reliance element, the fifth element,
 of its negligent misrepresentation claim.    
Based on the
 foregoing, Respondents
 were entitled to judgment as a matter of law on Alpha's negligent
 misrepresentation claim.  
     B. Negligence
Alpha's
 negligence claim and its negligent misrepresentation claim should have been
 treated as solely one claim for negligent misrepresentation.  See Rule 220(c),
 SCACR (stating that this court may affirm the circuit court's ruling upon
 any ground appearing in the record); Quail Hill, L.L.C. v. Cnty.
 of Richland, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (holding
 that a plaintiff's negligence claim against a county for its employee's mistake
 in advising the plaintiff's agent regarding a zoning classification was
 subsumed in its negligent misrepresentation claim); id. ("We agree
 with County that Quail Hill's claims of negligence and negligent misrepresentation should be treated as solely
 one for negligent misrepresentation.").  Because Respondents were entitled to
 judgment as a matter of law on Alpha's negligent misrepresentation claim, they
 were likewise entitled to judgment as a matter of law on Alpha's negligence
 claim.
Even if we were
 to examine the negligence claim independently, Respondents were entitled to
 judgment as a matter of law on this claim because they expressly disclaimed any
 warranty as to square footage and thus did not breach any duty to give truthful
 information to Alpha.   
     C. Breach
 of Contract
Alpha's
 complaint states that Respondents' representation regarding square footage
 constituted a condition of the contract of sale.  The complaint further states
 that despite this condition, the house contained only approximately 75% of the
 stated square footage, and, therefore, Respondents breached the contract of
 sale.
When the terms
 of a contract
 are clear, the interpretation of the contract is a question of law for the
 court.  Stribling v. Stribling, 369 S.C. 400, 404, 632 S.E.2d 291, 293 (Ct. App. 2006). 
 Here, the contract of sale has no provision stating the amount of the home's square
 footage.  In fact, it has a provision clearly stating that the listing and
 selling brokers give no warranty concerning the accuracy of the square footage. 
 Further, the
 parties' contract included an integration clause,
 stating "[t]he parties agree that this written contract expresses the
 entire agreement between the parties, and that there is no other agreement,
 oral or otherwise, modifying the terms hereunder . . . ."  Thus, the
 square footage representation in the MLS listing is not a part of the contract.  See Gilliland v. Elmwood Props., 301 S.C. 295, 302, 391 S.E.2d
 577, 581 (1990) ("The parol evidence rule prevents the introduction
 of extrinsic evidence of agreements or understandings contemporaneous with or
 prior to execution of a written instrument when the extrinsic evidence is to be
 used to contradict, vary, or explain the written instrument."); id. ("This is especially true when the written instrument contains a merger or
 integration clause.").
Because
 the alleged breach is not based on any provision in the parties' contract, Respondents were
 entitled to judgment as a matter of law on Alpha's breach of contract claim.
D.  Breach of Implied
 Warranty
Alpha's
 complaint states that Respondents' representation regarding square footage
 constituted an implied warranty that the house would be fit for its intended
 use and the normal expectations of a purchaser.  The complaint further states
 "[d]espite such implied warranty of fitness and habitability, the
 Plaintiff's home was not as represented and actually contained only
 approximately 75% of the . . . heated living area represented."
Here,
 Alpha conceded in its complaint that it purchased a used home from
 Respondents.  "[N]o warranty attaches to sales of used homes."  Arvai v.
 Shaw, 289 S.C. 161, 164, 345 S.E.2d 715, 717 (1986).  Further, the
 contract of sale expressly disclaimed any warranties as to the accuracy of
 square footage, the property's physical condition, or its fitness for a
 particular purpose.  
Based on the
 foregoing, Respondents
 were entitled to judgment as a matter of law on Alpha's breach of implied
 warranty claim.  
II.  Discovery
Finally, Alpha
 asserts that the circuit court erred in granting summary judgment to Respondents
 without first requiring Household to comply with Alpha's discovery requests.  We disagree. 
"A
 complete failure of proof concerning an essential element of the non-moving
 party's case necessarily renders all other facts immaterial."  Gauld
 v. O'Shaugnessy Realty Co., 380 S.C. 548, 559, 671 S.E.2d 79,
 85 (Ct. App. 2008) (citation and internal quotation marks omitted).  Therefore,
 "the nonmoving party must demonstrate the likelihood that further
 discovery will uncover additional relevant evidence and that the party
 is not merely engaged in a fishing expedition."  Dawkins
 v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 439 (2003) (citations
 and internal quotation marks omitted) (emphasis added).  
Here,
 the facts relevant to Alpha's claims are undisputed and are clearly reflected
 in the record.  Alpha closed on the sale of a used home without first measuring
 the home's heated square footage, despite the disclaimer in the MLS listing and
 despite the provisions of the contract disclaiming the accuracy of the square
 footage or any warranty of fitness for a particular purpose.  Therefore,
 further discovery will not uncover additional relevant evidence, as
 required by Dawkins.  
Based
 on the foregoing, the circuit court properly granted summary judgment to
 Respondents despite the fact that discovery had not yet been completed.
CONCLUSION
Accordingly, the
 judgment of the circuit court is
AFFIRMED.
SHORT, KONDUROS,
 and GEATHERS, JJ., concur.    

[1] Subsection
 (F) also states: "A licensee who represents a seller shall treat all prospective
 buyers honestly and may not knowingly give them false or misleading information
 about the condition of the property which is known to the licensee or, when
 acting in a reasonable manner, should have been known to the licensee." 
 The "condition of the property" includes square footage.  
[2] See Rayfield
 v. S.C. Dep't of Corr., 297 S.C. 95, 103, 374 S.E.2d 910, 914 (Ct.
 App. 1988) ("In order to show that the defendant owes him a duty of care
 arising from a statute, the plaintiff must show two things: (1) that the
 essential purpose of the statute is to protect from the kind of harm the
 plaintiff has suffered; and (2) that he is a member of the class of persons the
 statute is intended to protect."); id. ("If
 the plaintiff makes this showing, he has proven the first element of a claim
 for negligence: viz., that the defendant owes him a duty of care.").
[3] Also noteworthy
 is subsection (Q) of the statute, which states that the
 provisions of section 40-57-137 that are inconsistent with common law supersede
 common law and the common law may be used to aid in interpreting or clarifying
 the duties described in the statute.  The court's opinion in Schnellmann is
 consistent with section 40-57-137 and clarifies the scope of the buyer's duty
 to inspect to include measuring square footage.